[No. 33241-1-III. Division Three. August 9, 2016.]

KITTITAS COUNTY, *Respondent*, v. SKY ALLPHIN ET AL.,
*Appellants*.

356

*Leslie A. Powers*; and *Nicholas J. Lofing* (of *Davis Arneil Law Firm LLP*), for appellants.

*Kenneth W. Harper* and *Quinn N. Plant* (of *Menke Jackson Beyer LLP*); and *Gregory L. Zempel, Prosecuting Attorney*, and *Neil A. Caulkins, Deputy*, for respondent.

¶1 LAWRENCE-BERREY, A.C.J. — In 2011, Kittitas County (County) issued a notice of violation and abatement (NOVA) to Chem-Safe Environmental Inc. and its parent company, ABC Holdings Inc. (collectively Chem-Safe), for storing and

handling moderate risk waste without proper county permits. The Kittitas County Prosecuting Attorney's Office sought assistance from technical professionals at the Washington State Department of Ecology, and the deputy prosecutor and Ecology employees exchanged e-mails throughout the regulatory enforcement litigation.

¶2 Sky Allphin, Chem-Safe's president, then submitted a Public Records Act (PRA) request under chapter 42.56 RCW, seeking the County's records pertaining to the case, including its attorneys' e-mails and correspondence. The trial court reviewed the e-mails in camera and determined they were a product of litigation ongoing between the County and Mr. Allphin and were, therefore, exempt from production under the PRA.

¶3 Mr. Allphin argues the sealed e-mails are not attorney work product or attorney client privileged and, even if they are, the County waived any privilege when it exchanged the e-mails with Ecology. In the published portion of this opinion, we discuss the "common interest doctrine," an exception to the rule that the presence of a third party to a communication waives a privilege. We hold that this doctrine applies here and the County did not waive any privilege by consulting with Ecology.

¶4 Mr. Allphin also argues (1) the County's exemption logs are inadequate, (2) the County violated the PRA when it initially withheld or redacted records and then subsequently produced those same records, (3) the County failed to provide the fullest assistance, (4) the County unlawfully withheld handwritten notes by Richard Granberg, and (5) the County abused the judicial process and this court should release the e-mails as a sanction. In the unpublished portion of this opinion, we agree with Mr. Allphin that the County wrongfully withheld six e-mails, but disagree with his remaining arguments. We therefore affirm in part, reverse in part, and remand for further proceedings.

## FACTS

¶5 Chem-Safe operates a hazardous waste transport and transfer facility in Kittitas County, Washington. Beginning in 2009 or 2010, the County and Ecology worked with Chem-Safe to develop operations and engineering plans that would comply with Washington's waste handling regulations. In December 2010, James Rivard, the environmental health supervisor for the Kittitas County Public Health Department (KCPHD), received letters from the Idaho Department of Environmental Quality. The letters said an Idaho disposal company sent three shipments of waste back to Chem-Safe because the contents of Chem-Safe's waste drums did not match the labels on the drums or Chem-Safe's paperwork.

¶6 Mr. Rivard inspected Chem-Safe's facility and observed moderate risk waste materials. Chem-Safe did not have a permit from KCPHD to collect moderate risk waste or operate a moderate risk waste facility. Chem-Safe also failed to properly label hazardous waste, had unsanitary drums, and lacked a secondary containment for their drums.

¶7 The County issued Chem-Safe a NOVA, which alleged Chem-Safe had operated a hazardous waste facility without a proper permit, required Chem-Safe to take a number of abatement actions, and required Chem-Safe to suspend all facility operations until it obtained a permit. Mr. Rivard copied his letter to Gary Bleeker, Ecology's facilities specialist lead; Wendy Neet, Ecology's solid waste inspector; and Richard Granberg, Ecology's hazardous waste specialist. The County issued a health order that incorporated the NOVA's findings and requirements.

¶8 Chem-Safe appealed the NOVA and the hearing examiner affirmed. Chem-Safe appealed to the superior court, which also affirmed and ordered Chem-Safe to submit a sampling plan and test its facility. Chem-Safe then

appealed to this court. We upheld the NOVA and concluded Chem-Safe did not comply with the County's permitting ordinances. *See ABC Holdings, Inc. v. Kittitas County*, 187 Wn. App. 275, 284-86, 289, 348 P.3d 1222, *review denied*, 184 Wn.2d 1014, 360 P.3d 817 (2015).

¶9 Chem-Safe also brought a 42 U.S.C. § 1983 claim in federal court against the County, Ecology, Mr. Rivard, Mr. Granberg, Mr. Bleeker, and two other Ecology employees— Norman Peck with Ecology's toxics cleanup program, and his supervisor, Valerie Bound.

¶10 The Kittitas County Prosecuting Attorney's Office originally assigned Deputy Prosecutor Suzanne Becker to handle the Chem-Safe litigation. Deputy Prosecutor Zera Lowe later took over the case. The County's employees and Ecology's employees e-mailed one another and met in person throughout Chem-Safe's various appeals, and Ecology's employees generally acted in a consultative role with respect to the civil enforcement action. For example, Mr. Peck kept Mr. Rivard updated as to whether Chem-Safe had submitted a sampling plan, and discussed what the plan needed to include in order to meet both agencies' requirements. After Chem-Safe moved to stay the superior court's order, Ms. Lowe e-mailed Mr. Peck and asked for help responding to and gathering additional declarations. Mr. Peck e-mailed Chem-Safe's declarations to the other Ecology employees in order to coordinate a response, and also met with Ms. Lowe and Mr. Rivard.

¶11 On October 17, 2012, Mr. Allphin submitted a PRA request to the County requesting "[a]ll documentation, correspondence, pictures, court records and emails to and from Kittitas County Public Health and Kittitas County Prosecutors Office regarding Chem-Safe Environmental, Inc. dating from January 1, 2010 to current."[1] Clerk's Papers (CP) at 70. Mr. Allphin sent Ecology a similar

---

[1] Mr. Allphin also submitted two more PRA requests on November 21, 2012, and January 29, 2013. These requests were not voluminous, and the County responded to these requests without controversy.

request, seeking all of Ecology's documents regarding Chem-Safe. This request included all communications between Ecology and the Kittitas County Prosecuting Attorney's Office while working on the Chem-Safe case.

¶12 Ms. Lowe and legal secretary Angela Bugni were responsible for responding to Mr. Allphin's PRA request. When Ms. Lowe learned Mr. Allphin had also requested records from Ecology, she asked Ecology's public records officer not to release any records containing communications between the County's legal counsel and Ecology employees that would disclose legal strategy or the attorneys' thought processes. Ecology's records officer advised Ms. Lowe that Ecology would not release the records until the County sought court protection. However, Ecology inadvertently released a few e-mails between Ms. Becker (the former deputy prosecutor) and Ecology that Ms. Lowe believed contained attorney work product.

¶13 The County filed a complaint in the superior court naming Mr. Allphin, Chem-Safe, and Ecology as respondents. The complaint sought a declaratory judgment that the County and Ecology's e-mails were attorney work product and attorney client privileged and thus exempt from production under the PRA. The County moved the superior court to review the records in camera and also moved for a temporary restraining order (TRO) enjoining Ecology from releasing the challenged records until the court had the chance to review them.

¶14 At the hearing, the County handed up one sealed envelope with the caption "DOCUMENTS SUBMITTED FOR IN CAMERA REVIEW." CP at 781. The cover sheet identified 11 individual e-mails and identified the sender, recipients, and date and time at which the e-mail was sent.

¶15 The superior court reserved ruling at the hearing and later issued a memorandum decision. The court reviewed the records in camera and determined the e-mails were a product of litigation ongoing between the County and Mr. Allphin and were, therefore, exempt from produc-

tion under the PRA. The superior court also held the fact that the County e-mailed Ecology during the litigation did not waive this privilege, given that the County and Ecology worked cooperatively to enforce the environmental laws and were thus on the same "legal team." CP at 788.

¶16 In December 2013, the superior court incorporated its memorandum decision into a final order, dissolved the TRO, and permanently enjoined Ecology from producing the 11 e-mails it reviewed in camera. The court ordered Ecology to produce the e-mails it previously withheld under the TRO. The court found that sealing satisfied the *Ishikawa*[2] factors, then sealed the e-mails.

¶17 In March 2014, Mr. Allphin filed an amended answer and brought counterclaims against the County, alleging the County failed to provide the fullest assistance and unlawfully withheld nonexempt records. The County obtained new counsel. Throughout the next several months, the County and Mr. Allphin exchanged a number of letters discussing the adequacy of the County's PRA response.

¶18 In one of his letters, Mr. Allphin listed 21 additional e-mails from the County's exemption logs that he wanted the court to review in camera. Mr. Allphin disagreed with the County's claim that these e-mails were work product and thus exempt from disclosure. The County agreed to assemble the 21 e-mails for a second in camera review. Mr. Allphin and the County continued to fine tune the list of records the County would submit for the second in camera review.

¶19 The County and Mr. Allphin both moved for summary judgment. At the hearing, the County handed the court a sealed envelope containing 21 e-mails. The court reviewed them and determined they contained attorney work product and were thus exempt from production under the PRA. The court ruled the County and Ecology exchanged the e-mails in response to the ongoing Chem-Safe

[2] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982).

litigation, and that the County and Ecology shared a common interest in the enforcement of state and local environmental regulations. The court also found the County's initial claims of exemption were lawful, that the County provided its fullest assistance, and that Mr. Granberg's handwritten notes, i.e., the "smoking gun memorandum," was not a county record and, therefore, the County had no duty to disclose it. CP at 2982. The court then granted summary judgment for the County. The court then sealed the e-mails and granted final judgment for the County. Mr. Allphin appeals.

## ANALYSIS

### A. STANDARD OF REVIEW

¶20 This court reviews public agency actions challenged under the PRA de novo. RCW 42.56.550(3). We also review a summary judgment order de novo, engaging in the same inquiry as the trial court. *Andrews v. Wash. State Patrol*, 183 Wn. App. 644, 650, 334 P.3d 94 (2014), *review denied*, 182 Wn.2d 1011, 343 P.3d 760 (2015). Summary judgment is proper where the pleadings and affidavits show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing a motion for summary judgment, we construe the facts and reasonable inferences in favor of the nonmoving party. *Andrews*, 183 Wn. App. at 650-51. When the record consists entirely of documentary evidence and affidavits, we stand in the same position as the trial court and generally are not bound by the trial court's factual findings. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252-53, 884 P.2d 592 (1994) (plurality opinion).

### B. SEALED RECORDS FROM THE IN CAMERA REVIEW HEARINGS

■ ■ ¶21 The PRA is a "strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). It requires all state

and local agencies to disclose any public record on request, unless the record falls within certain narrowly construed exemptions. RCW 42.56.070(1), .030. It is the agency's burden to show a redacted or withheld record was exempt. RCW 42.56.550(1). Where the agency possesses undisclosed responsive records, it "must explain and justify any withholding, in whole or in part, of any requested public records." *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 432, 327 P.3d 600 (2013). "Silent withholding is prohibited." *Id.*

### 1. *The 21 e-mails from the second in camera review hearing*

¶22 Mr. Allphin argues that the 21 e-mails the trial court sealed following the second in camera review hearing are not exempt under the PRA because they do not contain attorney work product and are not attorney client privileged.

¶23 Under RCW 42.56.290, an agency does not have to disclose "[r]ecords that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts." This includes communications containing attorney work product. *Block v. City of Gold Bar*, 189 Wn. App. 262, 279-80, 355 P.3d 266 (2015), *review denied*, 184 Wn.2d 1037, 379 P.3d 951 (2016). The attorney client privilege similarly protects confidential communications between an attorney and a client from discovery or public disclosure. *Mechling v. City of Monroe*, 152 Wn. App. 830, 852, 222 P.3d 808 (2009); RCW 5.60.060(2)(a).

¶24 Attorney work product includes "documents and other tangible things that (1) show legal research and opinions, mental impressions, theories, or conclusions of the attorney or of other representatives of a party; (2) are an attorney's written notes or memoranda of factual statements or investigation; and (3) are formal or written state-

ments of fact, or other tangible facts, gathered by an attorney in preparation for or in anticipation of litigation." *Limstrom v. Ladenburg*, 136 Wn.2d 595, 611, 963 P.2d 869 (1998).[3] Work product documents need not be prepared personally by counsel; they can be prepared by or for the party or the party's representative as long as they are prepared in anticipation of litigation. *See* CR 26(b)(4).

¶25 Mr. Allphin argues two of the e-mails in the second index for in camera review—numbers 2 and 21—were not sent or received by attorneys at all, but were exchanged between Mr. Rivard and Mr. Peck, neither of whom are attorneys. However, number 2 on the index is an e-mail that Mr. Rivard sent to Mr. Peck *and* Ms. Lowe. *See* CP at 3239. The index sheet simply fails to list Ms. Lowe as a recipient. Number 21 on the index is an e-mail Mr. Rivard sent only to Mr. Peck. However, the substance of Mr. Rivard's e-mail is a forwarded message from Ms. Lowe, who asked Mr. Rivard to pass along the message to Mr. Peck. *See* CP at 3389.

■ ■ ¶26 Mr. Allphin also argues the 21 e-mails, while originating from an attorney, do not constitute attorney work product because they are not "mental impressions, thoughts, and theories," and are therefore not exempt under the PRA. Br. of Appellant at 24. However, under *Limstrom* and *Koenig*, the e-mails need only contain statements of fact gathered by an attorney or prepared by or for the party or the party's representative in anticipation of litigation. Without specifically describing the substance of the actual e-mails, it is clear these e-mails contain statements of fact and legal strategies prepared by and for the various em-

---

[3] *Limstrom* held the broad civil discovery rule, CR 26(b)(4), applies when determining whether records are exempt from production under RCW 42.56.290, rather than the much narrower criminal discovery rule, CrR 4.7(f)(1), which protects documents from disclosure under the PRA only " 'to the extent that they contain the opinions, theories or conclusions of investigating or prosecuting agencies.' " *Koenig v. Pierce County*, 151 Wn. App. 221, 230, 211 P.3d 423 (2009) (quoting CrR 4.7(f)(1)).

ployees of the County and Ecology in response to the Chem-Safe litigation.[4]

## 2. Waiver

¶27 Mr. Allphin argues the County waived any protected, privileged, or confidential right to the e-mails because its employees sent them to Ecology employees throughout the Chem-Safe litigation. Mr. Allphin specifically challenges the trial court's finding that the County did not waive these privileges due to the fact that the County and Ecology worked cooperatively to enforce the environmental laws and were thus on the same "legal team." CP at 788.

¶28 Generally, a party waives the attorney work product privilege if that party discloses documents to other persons with the intention that an adversary can see the documents. *Limstrom v. Ladenburg*, 110 Wn. App. 133, 145, 39 P.3d 351 (2002). Similarly, to qualify for attorney client privilege, a communication must be made in confidence. *Morgan v. City of Federal Way*, 166 Wn.2d 747, 757, 213 P.3d 596 (2009). The presence of a third person during the communication waives the privilege, unless the third person is necessary for the communication or has retained the attorney on a matter of " 'common interest.' " *Id.* (quoting *Broyles v. Thurston County*, 147 Wn. App. 409, 442, 195 P.3d 985 (2008)).

---

[4] Mr. Allphin argues the e-mails were not marked "confidential" or "work product" to protect from disclosure. Br. of Appellant at 24. The record does not support this argument. The first e-mail to which Mr. Allphin cites for this argument contains a disclaimer that begins, in capital letters, with "CONFIDENTIALITY NOTICE." CP at 2237. The 21 sealed e-mails all contain similar disclaimers. Mr. Allphin also argues that even assuming the e-mails are work product, this court should order the County to produce them under CR 26(b)(4)'s exception to the work product privilege. However, CR 26(b)(4) provides that a party seeking attorney work product may obtain it *only* after showing that he or she "has substantial need of the materials in the preparation of such party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Mr. Allphin fails to explain why he meets either of these requirements.

¶29 "The 'common interest' doctrine provides that when multiple parties share confidential communications pertaining to their common claim or defense, the communications remain privileged as to those outside their group." *Sanders v. State*, 169 Wn.2d 827, 853, 240 P.3d 120 (2010); *see also C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 716, 985 P.2d 262 (1999). The common interest doctrine is an exception to the general rule that the voluntary disclosure of a privileged attorney client or work product communication to a third party waives the privilege. *Avocent Redmond Corp. v. Rose Elecs., Inc.*, 516 F. Supp. 2d 1199, 1202 (W.D. Wash. 2007).

██ ██ ¶30 "The common interest or joint defense privilege applies where (1) the communication was made by separate parties in the course of a matter of common interest or joint defense; (2) the communication was designed to further that effort; and (3) the privilege has not been waived." *Id.* at 1203. A written agreement regarding the privilege is not required, but "the parties must invoke the privilege: they must intend and agree to undertake a joint defense effort." *Id.*; *see also In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) ("[T]he parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten.").

 ¶31 The common interest doctrine applies in the PRA context. *Sanders*, 169 Wn.2d at 854. "[D]ocuments that fall under the common interest doctrine are not discoverable in civil cases and so are exempt under the controversy exemption." *Id.* The *Sanders* court held the common interest doctrine exempted certain documents from disclosure under the PRA even if the Attorney General's Office (AGO) shared those documents with other agencies.[5] *Id.* at 840, 853-54.

---

[5] The *Sanders* court never explained what these documents were, what other agencies the AGO shared them with, or the nature of the relationship between the AGO and these other agencies. *See Sanders*, 169 Wn.2d at 837-41.

¶32 In contrast, in *Morgan*, a municipal court judge who was the subject of a hostile work environment investigation e-mailed the city attorney and complained the investigation created a hostile work environment for him. *Morgan*, 166 Wn.2d at 752. The judge then forwarded that e-mail message to the private e-mail address of one of the city council members. *Id.* The local newspaper filed a PRA request for the investigator's report, and the judge moved to prevent its release. *Id.* The court held the attorney client privilege did not apply to the e-mail the judge sent to the city attorney and the e-mail was therefore not exempt under the PRA. *Id.* at 757. This was because the judge later forwarded that e-mail to the city council member and the judge failed to demonstrate a common legal interest between him and the city council member. *Id.*

¶33 Here, although the County and Ecology did not have a joint prosecution agreement, a written agreement was not required because the record demonstrates the two agencies agreed to undertake a joint/common cause in the regulatory enforcement litigation against Chem-Safe. At the very beginning of the case, Ms. Becker e-mailed Mr. Granberg, Mr. Rivard, and Mr. Bleeker and scheduled a meeting to discuss Chem-Safe's compliance with Washington's permitting, transportation, storage, and disposal regulations. Throughout the litigation, the County asked Ecology questions about Chem-Safe's testing plans and about Chem-Safe's engineering and technical arguments. The record demonstrates Ecology was "acting in a consultative role with respect to the civil enforcement action."[6] CP at 1412.

¶34 Mr. Allphin argues that the County and Ecology did not have a common interest because the County sued Ecology to prevent Ecology from releasing the records, thus

---

[6] In fact, this collaborative relationship between the County and Ecology is statutorily required. RCW 70.105.005(10) provides that "because local conditions vary substantially in regard to the quantities, risks, and management opportunities available for such wastes, local government is the appropriate level of government to plan for and carry out programs to manage moderate-risk waste, *with assistance and coordination provided by* [*Ecology*]." (Emphasis added.)

making Ecology an opposing party for purposes of waiver. This argument conflates the two lawsuits. While the County listed Ecology as a respondent in *this case* in order to prevent Ecology from producing exempt documents, the County and Ecology were on the same legal team for purposes of the underlying regulatory enforcement action, which is separate from this PRA case.

¶35 Mr. Allphin also argues that the common interest doctrine is not a statutorily listed PRA exemption and, therefore, the County cannot use it as a basis for withholding the e-mails. The *Sanders* court expressly rejected this argument, finding that the common interest doctrine is merely a common law exception to waiver of privilege that applies when parties share a common interest in litigation. *Sanders*, 169 Wn.2d at 853.

¶36 While it is true that no attorney client relationship existed between the county prosecutor and Ecology, we hold the lack of such a relationship does not prevent the county prosecutor from seeking assistance from Ecology's technical professionals in enforcing the state and county environmental laws. Releasing these records would force government attorneys to forgo communicating with other law enforcement professionals during litigation due to the fear that their opponents will obtain their mental impressions and ideas.

¶37 Because the communications between the County and Ecology throughout the Chem-Safe litigation were protected under the work product and attorney client privileges, we conclude the trial court properly sealed the sets of 11 and 21 e-mails.

¶38 A majority of the panel has determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record in accordance with RCW 2.06.040.

KORSMO and PENNELL, JJ., concur.

Review granted at 187 Wn.2d 1001 (2017).